[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 10, 2005
THOMAS K. KAHN
CLERK

No. 03-15883
Non-Argument Calendar

Agency Docket No. A79-346-052

HANS YUNDA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision
of the Board of Immigration Appeals

_____

**(June 10, 2005)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Hans Yunda petitions for review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"). The permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), govern Yunda's petition for review. Substantial evidence supports the BIA's determination that Yunda failed to demonstrate eligibility for asylum or withholding of removal. Furthermore, the IJ's decision was not "inadequate and unreasoned" because it was supported by substantial evidence. Accordingly, Yunda's petition for review is **DENIED**.

## I. BACKGROUND

In September 2000, Yunda, a native and citizen of Colombia, was admitted to the United States as a nonimmigrant tourist, with authorization to remain until March 2001. AR at 155. In July 2001, the Immigration and Naturalization Service ("INS") served Yunda with a notice to appear, charging him with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States for a time longer than permitted. Id.

In December 2000, Yunda signed an application for asylum and withholding of removal under the INA and the United Nations Convention

2

Against Torture and Other Cruel, Inhumane, and Degrading Treatment or Punishment ("CAT"), alleging persecution based on his political opinion.[1] Id. at 146-54. In his application, Yunda alleged that (1) he was a "sympathizer" of the Conservative Party, (2) he "was threatened on several occasions over the phone by" members of the Revolutionary Armed Forces of Colombia ("the FARC"), and (3) he feared that his life would be in danger if he returned to Colombia. Id. at 150-51.

In his asylum application, Yunda further explained that he was a member of the Colombian National Army reserve, and he was involved in a military television production in which he played the role of a guerilla. Id. at 154. During a weekend trip to the outskirts of Bogota, he was stopped at a FARC roadblock. After that incident, he started receiving telephone threats stating that, if he did not leave, he and his family would be killed. Thereafter, Yunda decided to leave Colombia because he feared that he would be killed or his family would be harmed. Id.

At an immigration hearing, Yunda, represented by counsel, admitted the INS's factual allegations and conceded removability. Id. at 57-58. After listening

---

[1] Yunda does not argue on appeal that the BIA erred by denying his claim for CAT relief. Accordingly, we do not consider any issues regarding the denial of CAT relief. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).

3

to the testimony at the hearing and considering the evidence, the IJ denied Yunda asylum and withholding of removal under the INA and the CAT and ordered Yunda removed to Colombia. Id. at 34, 46. The IJ first found that there was no nexus between Yunda's conservative party activities and any persecution. Id. at 42-43. Next, the IJ found that the FARC's mistreatment of Yunda did not rise to the level of persecution because (1) the mistreatment was not on account of Yunda's military activities, but resulted from his role as an actor in "Men of Honor," a program produced by the Army that allegedly ridiculed the guerrillas; (2) the threatening telephone calls allegedly were based on Yunda's military service, but the guerrillas knew that he was only a reserve officer and were more interested in mistreating him for appearing in "Men of Honor"; (3) Yunda submitted no videotapes or police reports to corroborate his claims; (4) nothing has happened since the incident, and his family has not been harmed; and (5) Yunda stated that he cannot relocate within Colombia because the guerrillas are everywhere, but he conceded that the guerrillas had no interest in him. Id. at 43-45. The IJ did not provide separate findings for past and future persecution. See id.

Yunda, through counsel, filed a notice of appeal to the BIA, claiming that the IJ "erred as a matter of law when he refused to grant [Yunda] asylum . . . even

though he presented ample evidence and testimony regarding his persecution in Colombia." He further argued that the IJ "erred when he questioned [Yunda's] claim without taking into account the totality of the circumstances permeating his case." Id. at 29. In a brief in support of his appeal, Yunda argued that (1) he provided substantial evidence to support a finding of refugee status since he has suffered past persecution, (2) he provided substantial evidence to establish a well-founded fear of future persecution, (3) there has not been a sufficient change in the circumstances and conditions in Colombia to allow for Yunda's safe return to Colombia. Id. at 17-22. In its response, the INS argued that a summary affirmance was proper, and, in the alternative, "none of the six circumstances warranting review by a three-member panel are present in this case." Id. at 8. The BIA affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4). Id. at 2

## II. DISCUSSION

Yunda argues that he suffered past persecution and had a well-founded fear of future persecution on account of his political opinion. Specifically, Yunda asserts that he was stopped at a roadblock in the summer of 1999 by members of the FARC guerrilla group, and that he was beaten during the incident. Yunda also asserts that he received two threatening telephone calls after the roadblock

5

incident. Yunda asserts that he was beaten and threatened on account of his service in the Colombian National Army reserves. Yunda further argues that the IJ's decision was "inadequate and unreasoned."

When the BIA summarily affirmed the IJ's decision without an opinion, the IJ's decision became the final removal order subject to review. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). To the extent that the IJ's decision was based upon a legal determination, we review the IJ's decision de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001). The IJ's factual determinations are reviewed under the substantial-evidence test, and we must affirm the IJ's decision "'if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004) (citation omitted). Under this highly deferential standard of review, we must defer to the IJ's decision if it is supported by substantial evidence, unless the evidence "compels" a reasonable factfinder to find otherwise. INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S.Ct. 812, 815 n.1, 117 L.Ed.2d 38 (1992).

An alien who is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant

asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8

U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or <u>political opinion</u> . . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added). The asylum applicant carries the

burden of proving statutory "refugee" status. See <u>Al Najjar v. Ashcroft</u>, 257 F.3d

1262, 1284 (11th Cir. 2001). If the applicant meets this burden, then the Attorney

General may exercise his discretion to grant the applicant asylum. <u>Id.</u>

"To establish asylum eligibility based on political opinion or any other

protected ground, the alien must, with credible evidence, establish (1) past

persecution on account of [his] political opinion or any other protected ground, or

(2) a 'well-founded fear' that [his] political opinion or any other protected ground

will cause future persecution." <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226,

1230-31 (11th Cir. 2005) (per curiam) (quoting 8 C.F.R. § 208.13(a), (b)). "'[A]n

applicant must demonstrate that his or her fear of persecution is subjectively

genuine and objectively reasonable.'" <u>Id.</u> at 1331 (citation omitted) (alteration in

original).  Establishing a nexus between the statutorily listed factor and the feared persecution "'requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be <u>singled out</u> for persecution on account of'" the statutorily listed factor.  <u>D-Muhumed v. U.S. Att'y Gen.</u>, 388 F.3d 814, 818 (11th Cir. 2004) (citation omitted).

An alien generally can establish a "well-founded fear."  <u>Al Najjar</u>, 257 F.3d at 1289.  If, however, the alien does not establish past persecution, he or she bears the burden of demonstrating a well-founded fear of persecution by showing that (1) he or she fears persecution based on his or her religion, political opinion, membership in a particular social group, or other statutorily listed factor; (2) there is a reasonable possibility he or she will suffer persecution if removed to his or her native country; and (3) he or she could not avoid persecution by relocating to another part of his or her country, if under all the circumstances it would be reasonable to expect relocation.  8 C.F.R. § 208.13(b)(2), (3)(i).  "[W]here the alleged persecutors are not affiliated with the government, it is not unreasonable to require a refugee who has an internal resettlement alternative in his own country to pursue that option before seeking permanent resettlement in the United States, or at least to establish that such an option is unavailable."  <u>Mazariegos v. Office of U.S. Att'y Gen.</u>, 241 F.3d 1320, 1327 (11th Cir. 2001).  Furthermore,

"'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and . . . '[m]ere harassment does not amount to persecution.'" Sepulveda, 401 F.3d at 1231 (citations omitted).

An alien seeking withholding of removal under the INA must show that his life or freedom would "more-likely-than-not" be threatened upon return to his country because of, among other things, his political opinion or membership in a particular social group. See Mendoza, 327 F.3d at 1287; Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (per curiam); see also INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(b). This standard is more stringent than the "well-founded fear" standard for asylum. See e.g., Al Najjar, 257 F.3d at 1292-93; Mazariegos, 241 F.3d at 1324 n.2.

Upon careful review of the record and the parties' briefs, we discern no reversible error. Yunda failed to establish past persecution on account of his political opinion. The record supports the IJ's conclusion that a single beating and two threatening telephone calls Yunda received were on account of his appearance as an actor in an army television production, not on account of his political opinion. Moreover, it is not clear that these limited incidents rose to the level of persecution. See Sepulveda, 491 F.3d at 1231. As for Yunda's fear of future persecution, he received only two threatening telephone calls after the initial

9

roadblock incident in 1999, and he testified that neither he nor his family have received any threats since that time. Furthermore, the documents in the record indicate that people generally are able to relocate within Colombia after they are threatened.

## III. CONCLUSION

Because Yunda is unable to meet the well-founded-fear standard for asylum, he is unable to qualify for withholding of removal under the INA. Upon careful review of the IJ's decision, we reject Yunda's assertion that the decision was "inadequate and unreasoned." Accordingly, the **PETITION IS DENIED.**